## *In re* TACKE'S WILL.

(*Surrogate's Court, New York County.*   August 10, 1888.)

1. WILLS—CAPACITY TO MAKE—EVIDENCE.

More than a year before his death testator personally procured subscribing witnesses to his will, which had been previously drawn, and which was then read in their presence, and declared by testator to be as he desired it, and was left in the attorney's safe. The witnesses, who were testator's neighbors, and had known him for many years, testified that he was of sound mind and memory, and nothing to impeach their credibility was shown. The attorney was not called. Contestant's evidence showed that testator had promised to bequeath his property to the principal legatee, if she would care for him during his life; that she did care for him, maintaining herself during part of the time by outside employment; that she did not know of the will until some months after its execution. Similar propositions by testator to others had been rejected. Four partisan witnesses testified to intemperate habits and irrational conduct, and another witness testified that testator could not talk intelligibly nine months after the will was executed, but this testimony was rebutted. *Held*, that testator was competent.[1]

2. SAME—CONTEST—COSTS—LIABILITY OF ATTORNEY.

Under the provisions of the statute, that, when justice requires, the contestant may be compelled to pay costs, and, by virtue of the power of the court, to compel the attorney or counsel to pay costs in case of palpable bad faith, the contestant is liable for the costs, and the attorney and counsel should have a hearing upon the question of their liability.

On petition for revocation of the probate of the will of Christopher Tacke, deceased.

*Benjamin F. Gerding,* for contestant.   *David Welch* (*Amos G. Hull,* of counsel,) for Eliza Zundel *et al.*

RANSOM, S. On the 28th day of May, 1887, a petition for the probate of the will of the decedent was filed in this court by Eliza Zundel, a devisee and legatee, in which she alleged that the decedent left no next of kin. The subscribing witnesses were examined on the 15th of August, before the probate clerk, and the instrument was admitted as a will on the day following. On the 28th of September, 1887, on a petition filed by one Henry Paul, a citation was issued requiring the parties to the original proceeding to show cause why probate should not be revoked, and it is in the proceeding thus inaugurated that the question of the validity of the instrument is to be considered. The decedent left real property, consisting of a house and two lots, situated in the annexed district. The personal property was a few household effects of little value. By the will he devised the house and lot to Mrs. Zundel, and the vacant lot to her son Gustavus. The decedent had been twice married; the first wife having died many years ago, and the second having deserted him in 1884, taking with her at the time some $2,000 in money. He left no descendants. The evidence of two witnesses shows that the decedent left him surviving as next of kin, a brother, August Tacke, and the children of another brother, residing in the province of Hanover, in the kingdom of Prussia. The proceeding to revoke the will was begun in behalf of the brother, August Tacke, by Paul, (who is a resident of Philadelphia,) under a claim of authority; but it was not until the testimony was nearly closed that a properly authenticated power of attorney from the brother to him was produced. On the afternoon of December 16, 1885, the decedent called at the store of Mr. Bremerkamp, one of the subscribing witnesses, and asked that he accompany him that evening to sign his will. Bremerkamp assented, and the hour was fixed. Later he called on the other subscribing witness, Mr. Siemering, and requested him to go with him to the office of the attorney for the same purpose, and as they left Siemering's place they stopped at the store of Bremerkamp, whence the

---

[1] On the general subject of mental capacity to make a will, and evidence to show mental incapacity, see In re Bull, 2 N. Y. Supp. 52, and note; In re Ogden's Will, Id. 345; Keithley v. Stafford, (Ill.) 18 N. E. Rep. 740.

three walked to the office of Mr. Heiderman, a lawyer, a distance of about six blocks. As they entered the office the decedent stated to Heiderman that Siemering and Bremerkamp were to be the witnesses. The lawyer produced the will from his safe and stated that he would read it to the witnesses, that they should know its contents, and it was read in their presence. Both witnesses remembered the dispositive provisions, and they are the same as appear in the paper in question. Having read it, Heiderman asked the decedent whether it was as he wanted it, and he gave an affirmative reply. The attestation clause was read. Then, under the direction of Heiderman, it was signed by the decedent and by the two witnesses; they being shown where to place their signatures. On Heiderman's suggestion the paper was left with him to be kept with the decedent's other papers in his safe. The witnesses substantially agree in their statements in respect to what took place at the time of the execution of the instrument, and both testified that he was of sound mind and memory. I have no doubt that the requirements of the statute were complied with. Nothing has been shown to disprove the facts testified to by them, or to impeach their credibility. Both were for many years residents in the neighborhood, and are house-owners, and had been acquainted with the decedent for many years. If the petitioner's attorney had any doubt of the trustworthiness of their statement, he could have called Heiderman, who drew the will and superintended its execution, as their own witness, or could have procured an order of the court for his production for examination under section 2618 of the Code of Civil Procedure. They did not do so. On the conclusion of the testimony of the subscribing witnesses, the counsel first retained by the attorney for the petitioner withdrew from the case. The subsequent proceedings in his behalf convince me of the want of good faith in contention. The poverty of the proofs to sustain the allegations filed was made manifest by the fact that his counsel called as their first witness Mrs. Zundel, the principal legatee, by whom they proved abundant reasons for the benefaction in her favor. Early in 1885, about a year after the decedent had been deserted by his second wife, and he had become, at the age of about 55, somewhat enfeebled and incapacitated for the labor in which he had been employed, Mrs. Zundel and her four children became tenants in his house. After two months the decedent proposed to her that, if she would live in the house and take care of him during his life, he would leave his property to her after his death; and thenceforward she and her family resided in the apartments, she holding the relation of housekeeper for him until his death. To maintain her family she worked for others as a laundress and seamstress, and for a year, from the spring of 1885 to the spring of 1886, she was employed during the day in domestic service with a family in the neighborhood. At the expiration of that year the decedent's condition became too much enfeebled to admit of her absenting herself from the house, and whatever work she did afterwards was done in the house, or was occasional employment by the day outside. It was a few months before she gave up her position as a domestic that the will was executed. She testified that she did not know, until months after, that the decedent had made a will, and then only when he told her to go to Heiderman's office, and have him read it to her, that she might know she was provided for in case of death. She went, and Heiderman took the will from the safe, told her that she was provided for, and with his statement she was satisfied.

I am convinced that the paper was prepared and executed by the decedent as the result of the promise that he had made Mrs. Zundel two years and a half before, when she entered his service as a housekeeper. That she is truthful in her statement of the agreement made to give her his property on his death as her recompense, and for the considerations stated, is rendered probable by the testimony of Schwebius and Gans, both of whom had been neighbors for many years, and had been intimately acquainted with him.

After he had been deserted by his wife, he made a proposition to each to give his property to them on condition that the recipient should take care of him as long as he lived. In each case the offer was declined; and to Schwebius the decedent subsequently stated that he was a fool for not having accepted the proposition, and that his property was to go to Mrs. Zundel. Against this weight of evidence, there has been produced, in behalf of the petitioner, the testimony of Mrs. May and her husband, and Mrs. Vetter and her daughter, each of whom, on cross-examination, admitted that they were unfriendly to Mrs. Zundel. The record shows them to have testified under an extreme bias. The amended petition for revocation was supported by the affidavits of the two women, in which they affirmed the scandalous allegations of Paul contained in the paper. Mrs. May, when first called, was prepared to prove declarations of Mrs. Zundel, intended to sustain the allegation of undue influence. They were properly excluded as incompetent by the assistant who took the examination of the witnesses under the order of the court. She was twice recalled at subsequent hearings, and both she and her husband manifested an undue zeal in the effort to prove facts in support of the petitioner's contention. Mrs. Vetter and her family had been tenants in the decedent's house during his life-time, and after his death they declined to pay rent, they having decided, to their own satisfaction, that the premises were without an owner, and they had to be dispossessed by a legal proceeding. Each of the four witnesses named testified to long-continued habits of intemperance on the part of the decedent, and irrational conduct, and that for two years previous to his death he had been paralyzed on one side, and later he had lost the power of intelligible speech. The testimony of witnesses in rebuttal satisfies me that the statements of the decedent's intemperate habits and irrational acts were grossly exaggerated, and in some respects false. There is no doubt that, about the time of the execution of the instrument, he had had a slight paralysis on one side, which necessitated his using a cane in walking, and that near the close of his life he had another attack of the malady, which involved his vocal organs to the extent that it made it difficult for him to speak, though there is testimony in the case which shows that even then his speech was understood by those who knew him well. The effort was to show, by the testimony of the Mays and Vetters, that this disability covered a period anterior to the making of the will. To accept their statements must be to impute perjury to Siemering and Bremerkamp, the subscribing witnesses, in respect to whose integrity no suspicion has been shown to exist. I give full credence to their statements, and wholly discredit the evidence of those who seek to prove the decedent's physical disability and mental incapacity at the time the paper was executed, and there is but little in the case to show that his mind was not sound down to the time of his death. The testimony of Schneefuss does not help the petitioner's case, for he did not see the decedent earlier than September, 1886, and his impression was that it was December of that year. He states that the decedent was unable to speak intelligibly. But, whichever period was correct, it was many months after the signing of the will. The signature to the will is plainly written, and in the month of February, 1887, 14 months after, he executed a mortgage on the property to Mrs. Zundel, and the signature to it and the accompanying bond are a manifest deterioration in the quality of penmanship from the one attached to the will, and it is fair to infer from the difference that the severe shock to his physical system had supervened some time between the two periods. There is nothing shown in the relations to the petitioner and the decedent which should lead me to suspect a desire on the part of the latter to provide by a testamentary disposition for his brother. For nearly 40 years they have been separated; the decedent having been nearly all the time in this country, and the brother residing in Germany. It is doubtful if any correspondence was had between them, and none of the decedent's intimate acquaintances seem

to have been aware that he had any blood relatives in the world. It is not probable that the proceeding would have been begun but for the meddlesome interference of Paul, who was an acquaintance nearly 40 years ago. For motives best known to himself, he filed a petition for the revocation of probate, and about the same time intervened, in an action brought in the superior court by Mrs. Zundel, to foreclose the mortgage covering the property devised and mortgaged by the decedent to her. His testimony shows that the proceeding was champertous in its inception. After the execution of the will was proven by unimpeached witnesses, the matter should have ended, unless those acting in behalf of the petitioner had affirmative proofs to sustain their allegation. They had none. Thenceforward I am convinced that the contention was continued for speculative purposes only, and not at all to the credit of any who have sought to aid it.

The attorney for the contestant and his counsel, who have had the practical control and management of this contest, will be given an opportunity, on the 20th of September next, to present any facts which may explain and justify their course, and at the same time I will consider any facts and hear argument on behalf of the proponent bearing upon the same subject. The statute expressly provides that, when justice requires, the contestant may be compelled to pay the costs of the contest. The court also has the power, in a case of palpable bad faith, and fraud on the part of the attorney and counsel, either or both, to compel them to pay the costs personally. As to the contestant, I have no doubt now of his liability. I am not clear, however, as to his attorney and counsel. Let a decree be presented admitting the will. The proceeding will be placed on the motion calendar for September 20th next, for the purpose already indicated.